FILED
2022 FEB 15 PM 2:33
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AUGOSTO COTTE and MERCEDES HIDALGO, on behalf of themselves and a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> CVI SGP ACQUISITION TRUST, CVI SGP-CO ACQUISITION TRUST, and JOHN DOES 1-10, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** <br><br> Case No. 2:21-cv-00299-JNP-DAO <br><br> District Judge Jill N. Parrish <br><br> Magistrate Judge Daphne A. Oberg |

This case arises from an attempt by defendants CVI SGP Acquisition Trust ("CVI SGP") and CVI SGP-CO Acquisition Trust ("CVI SGP-CO") (collectively, "CVI" or "Defendants") to collect debts from plaintiffs Augosto Cotte ("Cotte") and Mercedes Hidalgo ("Hidalgo") (collectively, "Plaintiffs"). Defendants filed a motion to dismiss on the grounds of res judicata, or in the alternative, failure to state a claim. For the following reasons, the court GRANTS IN PART and DENIES IN PART Defendants' motion.

## FACTUAL BACKGROUND

This case arises from a relatively straightforward set of facts. Plaintiffs Cotte and Hidalgo are Utah residents and individual debtors. Defendants are debt collection agencies organized as Delaware Statutory Trusts. Cotte and Hidalgo each incurred debt from Sterling Jewelers. Defendants purchased Plaintiffs' debt from Sterling Jewelers.

On May 15, 2020, CVI SGP-CO filed a consumer debt collection action against Cotte in Utah state court and obtained a default judgment of $1,951.86 about a month later. Similarly, on

August 10, 2020, CVI SGP filed a consumer debt collection action against Hidalgo in Utah state court. CVI SGP obtained a default judgment of $2,543.68 about a month later. CVI SGP subsequently pursued and obtained a writ of continuing garnishment as to Hidalgo. During the time period in which Defendants pursued collection of Plaintiffs' debt, they were not registered with the state of Utah to collect debts as required by the Utah Collection Agency Act (the "UCAA"). *See* Utah Code §§ 12-1-1 to 12-1-11.

On April 10, 2021, Plaintiffs filed a complaint in Utah state court, (1) asserting a violation of the Fair Debt Collection Practices Act (the "FDCPA"); (2) asserting a violation of the Utah Consumer Sales Practices Act (the "UCSPA"); and (3) requesting assorted declaratory and injunctive relief, including a declaration that Defendants were acting unlawfully as an unlicensed collection agency, and an injunction against Defendants attempting to collect improperly entered judgments. CVI removed the case to federal court on May 10, 2021.

## LEGAL BACKGROUND

## I.  FAIR DEBT COLLECTION PRACTICE ACT

Plaintiffs' first claim for relief falls under the federal Fair Debt Collection Practices Act. Congress enacted the FDCPA because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* § 1692(e). The Tenth Circuit instructs that "[b]ecause the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

Plaintiffs specifically allege that Defendants engaged in unfair and deceptive acts and practices in violation of 15 U.S.C. §§ 1692e(2), (5), (10), and 1692f. Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." The following conduct violates the relevant subsections of § 1692e:

> "(2) The false representation of—[t]he character, amount, or legal status of any debt;"
> "(5) The threat to take any action that cannot legally be taken or that is not intended to be taken;"
> "(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

## II.   UTAH CONSUMER SALES PRACTICES ACT

Plaintiffs' second claim for relief falls under the Utah Consumer Sales Practices Act ("UCSPA"). The UCSPA aims to "protect consumers from suppliers who commit deceptive and unconscionable sales practices" and "to encourage the development of fair consumer sales practices." UTAH CODE § 13-11-2(2)-(3). The Utah Legislature instructed that the law "shall be construed liberally." *Id.* § 13-11-2. To that end, "[i]f it is claimed or appears to the court that an act or practice *may* be unconscionable, the parties shall be given a reasonable opportunity to present evidence as to its setting, purpose, and effect." *Id.* § 13-11-5(2) (emphasis added).

Although not expressly stated in the language of the UCSPA, "the UCSPA applies to collection agencies and debt collection actions." *Buhler v. BCG Equities, LLC*, No. 2:19-cv-814, 2020 WL 888733, at *4 (D. Utah Feb. 24, 2020) (citing *Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1320 (D. Utah 2019) (holding that credit collection agencies fit within the

UCSPA's definition of a "supplier" and debt collection actions fall within the meaning of a "consumer transaction")).

### III. UTAH COLLECTION AGENCY ACT

The Utah Collection Agency Act ("UCAA") outlines a licensing regime for entities engaging in debt collection in the state of Utah. Specifically, Utah Code § 12-1-1 mandates that "[n]o person shall conduct a collection agency, collection bureau, or collection office in [Utah] . . . unless at the time of conducting the collection agency, collection bureau, [or] collection office . . .that person . . . is registered with the Division of Corporations and Commercial Code and has on file a good and sufficient bond as hereinafter specified." Utah Code § 12-1-6 makes it "a class A misdemeanor" to "fail[] to comply with any provision of the [UCAA]."

The UCAA covers businesses in the mold of Defendants' companies. Specifically, a "collection office" includes an organization in the "business of buying debt originated by someone else and then collecting on that debt." *Lawrence v. First Fin. Inv. Fund V, LLC*, 444 F. Supp. 3d 1313, 1328 (D. Utah 2020).

### LEGAL STANDARD

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

## ANALYSIS

### I.     RES JUDICATA

Defendants first argue that the twin doctrines encompassed by res judicata—issue preclusion and claim preclusion—bar Plaintiffs' claims. *See Macris & Assocs., Inc. v. Neways, Inc.*, 16 P.3d 1214, 1219 (Utah 2000) ("The doctrine of res judicata embraces two distinct branches: claim preclusion and issue preclusion."). Specifically, Defendants contend that the earlier collection action in Utah state court acts as a bar to Plaintiffs' claims.[1] Defendants, as the party asserting preclusion, have the burden of proving that Plaintiffs' claims are, indeed, barred by preclusion. *See Timm v. Dewsnup*, 851 P.2d 1178, 1184 (Utah 1993); *see also Nwosun v. Gen. Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) ("Res judicata is an affirmative defense on which the defendant has the burden to set forth facts sufficient to satisfy the elements."). The court finds that Defendants have failed to carry that burden for both issue and claim preclusion.

### A.     *Issue Preclusion*

"Issue preclusion, sometimes referred to as collateral estoppel, prevents the parties from relitigating issues resolved in a prior related action." *Sevy v. Sec. Title Co. of S. Utah*, 902 P.2d 629, 632 (Utah 1995). The party seeking to invoke issue preclusion must establish the following:

> (1) the issue decided in the prior adjudication is identical to the one presented in the instant action; (2) the party against whom issue preclusion is asserted was a party, or in privity with a party, to the prior adjudication; (3) the issue in the first action was completely, fully, and fairly litigated; and (4) the first suit resulted in a final judgment on the merits.

---

[1] "In determining the preclusive effect of a state court judgment, the full faith and credit statute, 28 U.S.C. § 1738, 'directs a federal court to refer to the preclusion law of the State in which judgment was rendered.'" *Nichols v. Bd. of Cnty. Comm'rs*, 506 F.3d 962, 967 (10th Cir. 2007) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380-82 (1985)). Because Utah courts rendered the default judgments in the underlying cases, Utah preclusion law applies.

*Buckner v. Kennard*, 99 P.3d 842, 847 (Utah 2004).

The parties do not dispute the second and fourth elements. Therefore, the court focuses its analysis on whether the issue decided in the state case is identical to the issue to be decided in this federal case and whether the issue was fully and fairly litigated.

Defendants frame the relevant "issue" as whether Defendants were entitled to recover on the subject debts. Plaintiffs counter that the relevant issue is whether CVI's method of collecting debt complies with federal and state consumer protection statutes. The court agrees with Plaintiffs' framing. Whether the debt itself is valid, and thus recoverable, is not relevant to Plaintiffs' FDCPA and UCSPA claims. *See Adair v. Sherman*, 230 F.3d 890, 895-96 (7th Cir. 2000) (noting that the FDCPA applies irrespective of whether a valid debt actually exists). Instead, the present action turns on whether Defendants engaged in illegal debt collection practices. That issue never arose in the underlying state proceedings. The only issue decided in the prior litigation was whether Plaintiffs failed to make payments due under their contract with Sterling Jewelers. Accordingly, because the issue resolved in state court is not identical to the issue raised here—the legality of Defendant's collection methods—Defendants have failed to carry their burden of establishing that the issue decided in the prior adjudication is identical to the one presented in the instant action.

The court also finds that the issue of the legality of Defendants' actions was not fully and fairly litigated in the prior action. The Utah Court of Appeals has held that "an issue is likely not actually litigated where 'a judgment is entered by confession, consent, or default.'" *State v. Sommerville*, 297 P.3d 665, 675 (Utah Ct. App. 2013) (alterations omitted) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. e (1982) ("In the case of a judgment entered . . . by default, none of the issues is actually litigated.")); *see also* 18A CHARLES ALAN

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1442 (3d ed. 1999) (updated Apr. 2021) (noting that a default judgment should not support issue preclusion because "the essential foundations of issue preclusion are lacking for want of actual litigation or actual decision of anything" and because "a defendant may suffer a default for many valid reasons other than the merits of the plaintiff's claim"); *id.* ("[M]any federal cases have ruled in various circumstances that default judgments do not support issue preclusion.").[2]

Here, there is no indication on the record that the issue of whether Defendants' acts violated the FDCPA or UCSPA was ever raised by either party or even considered by the Utah court. To adjudicate the debts—i.e., whether Plaintiffs breached their contracts by failing to pay money owed—the state court did not need to make any determination under the FDCPA or UCSPA. Indeed, it is clearly established that a debt may still be valid even if the debt collector violated the FDCPA or UCSPA in attempting to collect on the debt. *See, e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("[T]he FDCPA is designed to protect consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists."); *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1168 (3d Cir. 1987) ("[T]he legislative history

---

[2] Indeed, the Tenth Circuit emphatically agrees that default judgments preclude collateral estoppel because the parties did not "actually litigate" an issue. *See Jenkins-Dyer v. Exxon Mobil Corp.*, 651 F. App'x 810, 818 (10th Cir. 2016) (unpublished) ("Where the previous case was resolved by entry of a default judgment, none of the issues is actually litigated, so issue preclusion does not apply." (citation omitted)); *In re Conner*, 37 F. App'x 445, 448 n.3 (10th Cir. 2002) (unpublished) ("[I]ssue preclusion would not apply to a default judgment because when a default is entered the merits of foreclosure have not been litigated."). And other circuit courts concur. *See, e.g.*, *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981) ("If the important issues were not actually litigated in the prior proceeding, as is the case with a default judgment, then collateral estoppel does not bar relitigation in the bankruptcy court."); *Lee ex rel. Lee v. United States*, 124 F.3d 1291, 1295-96 (Fed. Cir. 1997) ("When judgment is issued as the result of a default . . . the underlying issues have not been actually litigated."); *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) (noting that "a default judgment is normally not given preclusive effect under the collateral estoppel doctrine because no issue has been actually litigated" (citation omitted))

indicates clearly that it is exactly such a person, *i.e.*, one who has contracted for goods or services and is unable to pay for them, that Congress intended to protect."). Accordingly, it was not necessary for the state court to decide the FDCPA or UCSPA claim in order to adjudicate the breach of contract claim that underlies the debt. *See Bobby v. Bies*, 556 U.S. 825, 829 (2009) (holding that issue preclusion only "bars relitigation of determinations necessary to the ultimate outcome of a prior proceeding"). Because Plaintiffs never asserted that Defendants acted illegally in collecting on the debt, and the court never adjudicated that issue, the court finds that issue preclusion does not bar litigation of the issue in this case.[3]

Because Defendants have failed to establish that the issue in the underlying state case is identical to the issue to be precluded from litigation, and because Defendants have failed to establish that the question of the legality of Defendants' debt collection practices was fully and fairly litigated in the prior action, Defendants may not avail themselves of issue preclusion in the present action.

### B.   *Claim Preclusion*

Defendants also attempt to use claim preclusion to bar Plaintiffs' action. In order for claim preclusion to bar a subsequent action, the proponent of preclusion must demonstrate three things. "First, both cases must involve the same parties or their privies." *Madsen v. Borthick*, 769

---

[3] Even were the court to find that this situation meets the requirements for application of collateral estoppel, the Utah Supreme Court has noted that "collateral estoppel can yield an unjust outcome if applied without reasonable consideration and due care." *Buckner*, 99 P.3d at 847 (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 330-31 (1979)). Accordingly, "[c]ollateral estoppel is not an inflexible, universally applicable principle." *Id.* (citation and alterations omitted). Instead, "[p]olicy considerations may limit its use where the underpinnings of the doctrine are outweighed by other factors." *Id.* (citation and alterations omitted). Here, unrepresented parties failed to respond to a debt collection action. Precluding these parties from challenging unfair debt collection practices—indeed, the very practices the FDCPA intended to prevent—simply because they did not know that they needed to respond and raise that issue in the state court action would certainly represent an unjust outcome.

P.2d 245, 247 (Utah 1988). "Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action." *Id.* "Third, the first suit must have resulted in a final judgment on the merits." *Id.*

Here, the parties do not dispute the first and third elements. Thus, the issue for the court is whether Plaintiffs could and should have raised their claims in the first action. To that end, the Utah Supreme Court has adopted the transactional approach set out in § 24 of the Restatement (Second) of Judgments. *Gillmor v. Fam. Link, LLC*, 284 P.3d 622, 627 (Utah 2012). "Under the transactional test, the claims are the same if they arise from the same operative facts, or in other words from the same transaction." *Id.* While "[n]o single factor is determinative," the Utah Supreme Court instructs the court to bear in mind "such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* (citation omitted).

Here, the state and federal claims arise from different transactions. The underlying state claims against both Plaintiffs arise from a transaction between the plaintiff and Sterling Jewelers. Sterling Jewelers extended credit to Plaintiffs, who agreed to make payments on the credit extended. Plaintiffs, however, failed to make the agreed-upon payments, which led to the state lawsuit. At bottom, Plaintiffs' action of opening a credit line—presumably to buy a piece of jewelry—and subsequent failure to pay money owed gives rise to the state law claims.

In contrast, the federal lawsuit arises from actions taken by CVI months later. Specifically, Plaintiffs allege that CVI engaged in various debt collection practices, including filing a lawsuit in state court, without proper state licensing. But CVI's debt collection tactics against Plaintiffs represent an entirely separate transaction than the transactions that led to the

underlying debt.[4] *See Carvana v. MFG Fin., Inc.*, 547 F. Supp. 2d 1219, 1226 (D. Utah 2008) ("Defendants' state proceedings, arising from [plaintiff's] outstanding debt, rest on a different set of facts and require different evidence than [plaintiff's] federal action as to [d]efendant's unlawful collection of that debt."); *Peterson v. United Accts., Inc.*, 638 F.2d 1134, 1137 (8th Cir. 1981) ("[T]he circumstances giving rise to the original debt are separate and distinct from the collection activities undertaken by [the defendants]. While the debt claim and the FDCPA counterclaim raised here may, in a technical sense, arise from the same loan transaction, the two claims bear no logical relation to one another."); *Nikkel v. Wakefield & Assocs., Inc.*, No. 10-cv-2411, 2011 WL 4479109, at *5 (D. Colo. Sept. 26, 2011) ("Plaintiff's FDCPA claim does not relate to the existence of the underlying debt or her breach of contract; rather, it alleges that defendant violated the FDCPA when it attempted to collect that debt.").

Defendants rely heavily on *McMurray v. Forsythe Fin., LLC*, No. 1:20-cv-8, 2021 WL 83265, at *3 (D. Utah Jan. 11, 2021), which holds that "the state court action and [the federal]

---

[4] *Whitaker v. Ameritech Corp.*, 129 F.3d 952 (7th Cir. 1997) provides a helpful comparison. In that case, Whitaker accrued debt to her telephone service. Ameritech subsequently attempted to collect on the debt, allegedly in violation of the FDCPA. The Seventh Circuit, in rejecting Ameritech's attempt to apply claim preclusion to bar Whitaker's FDCPA claim, stated that

> [w]hile it is true, as Ameritech asserts, that Whitaker's claims do arise out of her telephone service in the most general sense, the essence of her claim is that Ameritech has injured her in the collection process. Debt attachment and debt collection are matters separated by time and purpose. Whitaker incurred a debt to Ameritech every time she picked up the telephone to make a long distance or information provider call. Ameritech's collection procedures, however, never affected Whitaker until she failed to pay her bill. To lump debt attachment and debt collection together as the same cause of action under the res judicata analysis is to give res judicata broader sweep than we believe the Illinois courts are willing to give it.

*Id.* at 958. The *Whitaker* court further noted that their decision "comports with the policy considerations that underlie res judicata." *Id.* While a defendant "should reasonably expect to rely on the default judgment," a defendant "should also expect that its obligation to comport with other law in its debt collection practices is not extinguished when a court determines that a debt is valid." *Id.*

case arise out of the same transaction, specifically Forsythe's effort to collect on the debt allegedly owed by Plaintiff." This court disagrees with *McMurray*'s reasoning.[5] While Defendants' tactics in collecting on the debt allegedly owed by Plaintiff led to the federal lawsuit, Plaintiffs' failure to pay a debt led to the state lawsuit. Because the state and federal claims do not arise from the same transaction, Plaintiffs were not required to raise them in the state action.[6]

Finally, Defendants argue that "a party is precluded from raising a claim that could have been raised as a defense in a previous action if the relationship between the claim now being raised and the defense is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." ECF No. 18, at 8 (quoting *McMurray*, 2021 WL 83265, at *4). Plaintiffs respond first that the Utah Supreme Court has never adopted this perspective from the Restatement (Second) of Judgments, and second that prevailing on their claims would not require the court to nullify the state judgment.

As an initial matter, this court was unable to locate any authority where a Utah state court expressly adopted the Restatement (Second) of Judgment's position that a party is precluded from raising a claim in a subsequent action if successful prosecution of that action would in effect nullify the judgment entered in the prior litigation. And, indeed, Defendants provide no

---

[5] The court further notes that *McMurray* is merely persuasive authority and does not bind this court.

[6] Defendants argue that because the claims underlying the state lawsuit and the claims underlying the federal lawsuit arise from the same transaction, the present claims were compulsory counterclaims that were required to be asserted in the prior state case. But this position has been roundly rejected by a number of courts. *See Garduno v. Autovest LLC*, 143 F. Supp. 3d 923, 929 (D. Ariz. 2015) ("The strong majority view is that FDCPA claims such as Plaintiffs' are not compulsory counterclaims in actions involving the original debt."); *Carvana*, 547 F. Supp. 2d at 1227-28 ("[E]very published decision directly addressing the issue . . . has found that FDCPA lawsuits and lawsuits arising from the underlying contractual debt are *not* compulsory counterclaims." (quoting *Hart v. Clayton-Parker & Assocs., Inc.*, 869 F. Supp. 774, 777 (D. Ariz 1994)).

such authority. However, Utah courts regularly hold that "[t]he general rule of law is that a judgment may not be drawn in question in a collateral proceeding." *Olsen v. Bd. of Educ.*, 571 P.2d 1336, 1338 (Utah 1977); *see also Tolle v. Fenley*, 132 P.3d 63, 67 (Utah Ct. App. 2006) (same).

Applying that general rule, successful prosecution of claims under the FDCPA and UCSPA would not necessarily draw into question the judgment entered in the Utah state court litigation. *See Buford v. Palisades Collection, LLC*, 552 F. Supp. 2d 800, 808 (N.D. Ill. 2008). The FDCPA was designed to protect consumers from unscrupulous debt collection measures, regardless of whether a valid debt exists. Similarly, the UCSPA is designed to protect consumers from deceptive practices, and is not predicated on any underlying debt being found invalid. Therefore, the underlying debt could remain valid even if the court found a violation of either law. In other words, a court could find that the debtor breached a commitment to pay, while also finding that the debt collector acted unlawfully in collecting on the debt.

Indeed, both statutes carry a statutory damages provision, which provides for fixed damages, irrespective of the validity of the debt. Imposing statutory damages does not require that the court nullify—or even consider the validity of—the underlying state judgment. *See, e.g.*, *Morgan v. Carrington Mortg. Servs.*, 719 F. App'x 735, 743 (10th Cir. 2017) (unpublished) (noting that where a plaintiff's "claims would provide for damages as permitted by federal law," successful prosecution of the claim "would not nullify the [underlying] judgment or impair defendants' rights"). In other words, even if Plaintiffs prevail on their FDCPA and UCSPA claims, CVI could still be entitled to a valid debt purchased from Sterling Jewelers—CVI would simply need to collect that debt via lawful means.

However, to the extent that Plaintiffs request declaratory or injunctive relief that represents a collateral attack on the state court judgment, claim preclusion bars such claims. *Olsen*, 571 P.2d at 1338 (applying "[t]he general rule of law" that "a judgment may not be drawn in[to] question in a collateral proceeding"); *see also Estrada v. Mendoza*, 275 P.3d 1024, 1028 (Utah Ct. App. 2012) (holding that the plaintiffs' UCSPA claim "is not a collateral attack" where the plaintiffs did not "seek to have those judgments vacated or reversed or modified, or to prevent their enforcement" (citation and alteration omitted)). For instance, Plaintiffs' amended complaint requests a declaration that the state court judgments are unenforceable and an injunction prohibiting Defendants from attempting to collect any sums related to the unenforceable judgments. But the state court has already decided that the judgment is valid and enforceable. Accordingly, such requests clearly aim to undermine the underlying state judgment and, as such, are prohibited under claim preclusion.

Further, Plaintiffs' requests to render the state court judgment unenforceable exceed the scope of the FDCPA.[7] The FDCPA provides for civil liability, including actual damages and additional damages up to $1,000 for an individual or up to $500,000 for a class action. *See* 15 U.S.C. § 1692k(a)(2). But "equitable relief is not available to an individual under the civil liability section of the [FDCPA]." *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 834 (11th Cir. 1982); *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 268 n.4 (5th Cir. 2000)

---

[7] The court notes that the UCSPA, unlike the FDCPA, does provide for declaratory and injunctive relief. *See* UTAH CODE § 13-11-19(1)(a)-(b). However, as discussed above, any request for an injunction that renders the underlying state judgment unenforceable represents an improper collateral attack on the state judgment, and is barred by res judicata. Conversely, any injunction that would not attack the state court judgment—for example, the injunction requested at ECF No. 15 ¶ 72 ("CVI should further be enjoined from any debt collection in the State of Utah while unlicensed in violation of Utah Code 12-1-1.")—could be permitted under the UCSPA without raising res judicata concerns. But because, as discussed below, the court dismisses the UCSPA claim for failure to state a claim, there is no longer a basis for issuing that injunction.

("[C]ourts applying the FDC[P]A have held that it does not allow private actions for injunctive relief."); *see also Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320, 1338 (D. Utah 1997); *VerSteeg v. Bennett, Deloney & Noyes, P.C.*, No. 08-cv-153, 2009 WL 10670543, at *1 (D. Wyo. Feb. 19, 2009) ("Equitable relief, such as an injunction, is not available in [FDCPA] actions.").

In sum, the court DISMISSES Plaintiffs' claims to the extent they seek declaratory or injunctive relief that would, in essence, relitigate the claim already decided by the state court judgment. However, to the extent Plaintiffs seek statutory or actual damages, res judicata does not bar their FDCPA and UCSPA claims.

## II.    FAILURE TO STATE A CLAIM

Upon finding that issue preclusion and claim preclusion do not bar Plaintiffs' lawsuit, the court continues to Defendants' substantive objections to Plaintiffs' causes of action. Defendants argue that their alleged failure to register as a collection agency as required by Utah law does not give rise to a violation of the FDCPA or the UCSPA. Specifically, Defendants contend that Plaintiffs improperly attempt to predicate their claims for violations of the FDCPA and the UCSPA on violation of the UCAA.

### A.    *Failure to State a FDCPA Claim*

Defendants contend that Plaintiffs cannot transform a violation of the UCAA into a private right of action under the FDCPA. But Plaintiffs attempt no such thing. Rather, Plaintiffs attempt to use the alleged UCAA violations to make out an element required for a claim under the FDCPA. For instance, 15 U.S.C. § 1692e(5) makes unlawful "[t]he threat to take any action that cannot legally be taken." The UCAA outlaws conducting a collection office without registering with the Division of Corporations and Commercial Code. *See* UTAH CODE § 12-1-1. Thus, suing to collect while unregistered with the relevant Utah authority allegedly constitutes an

action that cannot legally be taken in Utah. Accordingly, Plaintiffs can use a violation of the UCAA to establish an element required under the FDCPA.

In *Buhler v. BCG Equities, LLC*, No. 2:19-cv-814, 2020 WL 888733, *3-*4 (D. Utah Feb. 24, 2020), Judge Kimball aptly explains how *Gunther v. Midland Credit Management, Inc.*, No. 2:17-cv-704, 2018 WL 4621764, at *5, *9 (D. Utah Sept. 26, 2018), *Garner v. Asset Management Associates, Inc.*, No. 2:10-cv-965, 2011 WL 6398112, at *1 (D. Utah Dec. 20, 2011), and *Muscato v. Northland Group, Inc.*, No. 1:13-cv-42, 2015 WL 12600165, at *6 (D. Utah Jan. 30, 2015)—the three cases cited by Defendants—all support the proposition that failing to register can, under the right circumstances, provide evidence of an FDCPA violation.

First, Judge Kimball explains that "*Gunther* holds that a violation of the UCAA may support a violation of the FDCPA under certain circumstances." *Buhler*, 2020 WL 888733, at *3. These circumstances include where "defendant's dunning letters could plausibly lead an unsophisticated consumer to believe that the time-barred debt was legally enforceable." *Id.* (citation omitted). Second, Judge Kimball explained that, in *Garner*, "the court rejected the claim that failing to register created a *per se* violation of the FDCPA" but instead held that failing to register could nevertheless result in an FDCPA violation in certain circumstances. *Id.* To that end, the *Garner* court specifically "distinguish[ed] between communications that merely inform a person they owe a debt versus those that threaten to take an action." *Id.* (citation omitted). Finally, Judge Kimball noted that the *Muscato* court reiterated the importance of whether the debt collector's efforts include the threat or actual filing of a lawsuit. *See id.* But because the *Muscato* court found no evidence of an actual or threatened lawsuit, it refused to find a violation of the FDCPA.

15

Therefore, although *Gunther*, *Garner*, and *Muscato* generally disadvantaged the plaintiffs, in each instance the presiding judge recognized that violation of the UCAA *could* provide a basis for finding an FDCPA violation. In Judge Kimball's words, "[t]hese three decisions . . . support Plaintiffs' argument that a violation of the UCAA's registration provision may provide a basis for finding an FDCPA violation when accompanied by the filing of a lawsuit to collect debt." *Buhler*, 2020 WL 888733, at *4. That plausibility—combined with the facts of this case, which include an alleged illegal lawsuit[8]—suffices at the pleadings stage. Accordingly, the court finds that Plaintiffs have adequately pleaded that CVI violated the FDCPA.

### B.    *Failure to State a UCSPA Claim*

In their second claim for relief, Plaintiffs allege that CVI violated the UCSPA by engaging in deceptive and unconscionable sales practices. Specifically, Plaintiffs argue that Defendants violated two provisions of the UCSPA—Utah Code § 13-11-4 and § 13-11-5. Utah Code § 13-11-4 makes it unlawful to commit a deceptive act or practice in connection with a consumer transaction. Utah Code § 13-11-5 outlaws unconscionable acts or practices in connection with a consumer transaction. Plaintiffs allege that CVI misled consumers "[b]y attempting to collect debts without a disclosure that it did not have a license to do so" which would deceive "the least sophisticated consumer" into believing that "CVI had the legal right to collect debts in the state of Utah." ECF No. 15 ¶ 56. In further support of their position, Plaintiffs

---

[8] And courts have noted that, although the language of the FDCPA refers to "threatening" an unlawful act, it would defy reason to punish threatening an unlawful act, but not taking the unlawful act itself. Thus, "[t]o argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority, as opposed to *threatening* to act where it has no legal authority, would defy the very purposes of the section." *Marchant v. U.S. Collections W., Inc.*, 12 F. Supp. 2d 1001, 1006 (D. Ariz. 1998); *see also Scott v. Portfolio Recovery Assocs., LLC*, 139 F. Supp. 3d 956, 969 (S.D. Iowa 2015) ("[T]he majority of courts . . . find § 1692e applies not only to threatened actions but also to actions actually taken.").

also cite Utah Administrative Code Rule 152-11-5(B)(5), which states that "[i]t shall be a deceptive act or practice . . . for a supplier to misrepresent that the supplier had the particular license, bond, insurance, qualifications, or expertise that is related to the work to be performed."[9]

Defendants cite a number of cases from this district which hold that a violation of the UCAA does not form the basis of a violation of the UCSPA. *See* ECF No. 18, at 11-13. Defendants further argue that Plaintiffs' UCSPA claim fails because Plaintiffs have not pled that Defendants had the requisite knowledge or intent to engage in deceptive or unfair business practices as required by the UCSPA.

The court first addresses the parties' arguments as they relate to deceptive acts or practices under Utah Code § 13-11-4. In order to state a claim that Defendants violated the UCSPA by committing a deceptive act, the plain language of the statue requires Plaintiffs to allege that Defendants acted knowingly or intentionally in misleading Plaintiffs.[10] *See* UTAH

---

[9] The court also notes that Plaintiffs attempt to use the UCSPA's stated intent of "mak[ing] state regulation of consumer sales practices not inconsistent with the policies of the Federal Trade Commission Act relating to consumer protection" as evidence that the court should find an alleged violation of the FDCPA to also constitute an alleged violation of the UCSPA. *See* UTAH CODE § 13-11-2(4). But that position reads too much into the UCSPA. The UCSPA aims only to make state regulation "not inconsistent" with federal regulation. Simply because an action violates federal law—but not state law—does not render the two laws "inconsistent." Nor does consistency require that the two statutes carry identical definitions of what constitutes "deceptive" or "unconscionable." Instead, the court looks to the plain language of the statutes to determine what each statute encompasses as "deceptive" or "unconscionable" acts.

[10] In accordance with this view, the court rejects the stark position that "'a violation of the UCAA does not provide a basis for a UCSPA claim'" because "the court cannot transform a (purported) violation of the UCAA into a private right of action under the UCSPA." *See Ayres v. Portfolio Recovery Assocs., LLC*, No. 2:17-cv-1088, 2018 WL 5849472, at *2-*3 n.35 (D. Utah Nov. 8, 2018) (quoting *Gunther*, 2018 WL 4621764, at *9). While a violation of the UCAA is not per se evidence of a UCSPA claim, a violation of the UCAA can provide some evidence that a defendant acted in a deceptive manner. The UCSPA provides a private right of action for such deceptive acts; the court declines to dismiss that cause of action simply because a plaintiff predicates her claim of a deceptive act on a UCAA violation. However, to establish a violation of the UCSPA, Plaintiffs must not only allege that Defendants failed to register in violation of the UCAA; they must also allege that Defendants knowingly or intentionally misled Plaintiffs about

CODE § 13-11-4(2) ("[A] supplier commits a deceptive act or practice if the supplier *knowingly or intentionally* [does the following acts.]" (emphasis added)); *see also Utah ex rel. Div. of Consumer Prot. v. GAF Corp.*, 760 P.2d 310, 313 (Utah 1988) ("Section 13-11-4 of the [UCSPA] was amended in 1985 to require 'intent to deceive' on the part of a supplier before a deceptive trade practice can be found."); *Rawson v. Conover*, 20 P.3d 876, 883 (Utah 2001) ("The [UCSPA] . . . requires that the supplier knowingly or intentionally deceive the consumer."); *Hines v. Overstock.com, Inc.*, No. 09-cv-991, 2013 WL 4495667, at *8 (E.D.N.Y. Aug. 19, 2013) ("Utah courts and courts employing Utah law have consistently recognized intent as an element of a claim brought under the Utah Act.") (collecting cases).

Under Rule 9(b) of the Federal Rules of Civil Procedure, an action sounding in fraud typically must be pled with particularity. And "a UCSPA claim is essentially a claim for statutory fraud." *Westgate Resorts, Ltd. v. Consumer Protection Grp., LLC*, 285 P.3d 1219, 1227 (Utah 2012). However, Rule 9(b) provides an exception that permits "intent" and "other conditions of a person's mind [to] be alleged generally." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) (citation omitted). Plaintiffs understand Rule 9(b)'s concession that "general" allegations suffice to allege intent to mean that "conclusory allegations [of intent] are sufficient." ECF No. 19, at 25.

But Plaintiffs misapprehend Rule 9(b)'s reduced requirement for pleading a defendant's state of mind. Rule 9(b) "merely excuses a party from pleading . . . intent under an elevated pleading standard"; "[i]t does not give him license to evade the less rigid—though still operative strictures of Rule 8." *Ashcroft*, 556 U.S. at 686-87. And, of course, conclusory allegations fail to satisfy the requirements of Rule 8. *Bowers v. Mortg. Elec. Registration Sys.*, No. 10-4141, 2011

---

the legality of their debt collection business. This position is in accordance with Judge Kimball's position in *Buhler*: A violation of the UCAA "may be a violation of the UCSPA if . . . evidence is presented that an agency concealed its registration status with knowledge or intent to deceive a debtor." 2020 WL 888733, at *5.

WL 2149423, at *3 (D. Kan. June 1, 2011) ("The Supreme Court in *Twombly* and *Iqbal* clarified that a plaintiff was required to provide more than bare bones assertions and conclusory statements in a complaint to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)."). Indeed, the court "need not consider conclusory allegations," which "are allegations that do not allege the factual basis for the claim" on a motion to dismiss. *Margae, Inc. v. Clear Link Techs., LLC*, 620 F. Supp. 2d 1284, 1285 (D. Utah 2009) (citing *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) and quoting *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995)); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

Even viewing the facts in the light most reasonable to Plaintiffs, Plaintiffs include only a single conclusory allegation that "Defendants CVI purposefully engaged in these activities knowingly and intentionally to harm consumers and gain an advantage over its competitors." ECF No. 15 ¶ 62. But the "complaint must set forth some factual basis for conclusory allegations of intent" and "these factual allegations must give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Bryner v. Bryner*, No. 2:09-cv-161, 2009 WL 2920376, at *6 n.5 (D. Utah Sept. 11, 2009) (citation omitted); *see also Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Here, Plaintiffs provide no factual basis for their conclusory allegation that Defendants acted knowingly or intentionally in misrepresenting their licensing status.[11] Because "legal conclusions . . . must be supported by factual allegations," Plaintiffs fail

---

[11] And Utah Administrative Code Rule § 152-11-5(B)(5) does not rescue Plaintiffs' argument. While the Rule does state that "[i]t shall be a deceptive act or practice . . . for a supplier to misrepresent that the supplier has the particular license," this Rule does not excuse the requirement—plainly stated in the UCSPA—that a deceptive act be knowing or intentional. Therefore, a misrepresentation regarding licensing can certainly qualify as a UCSPA violation—

to state a claim that Defendants knowingly or intentionally engaged in deceptive acts under the UCSPA. *See Ashcroft*, 556 U.S. at 679.

The court now turns to Plaintiffs' argument that Defendants engaged in unconscionable acts under Utah Code § 13-11-5 in enforcing the debts against them. "Unconscionability," unlike deceptive acts, "does not require proof of specific intent but can be found by considering circumstances which the supplier "knew or had reason to know."" *Wade v. Jobe*, 818 P.2d 1006, 1016 (Utah 1991) (quoting UTAH CODE § 13-11-5(3)). Plaintiffs include no allegations in the amended complaint that specifically relate to unconscionability. Indeed, it appears that Plaintiffs have "simply repackaged [Defendants'] allegedly deceptive conduct and called it unconscionable." *Morrison v. Clear Mgmt. Sols.*, No. 1:17-cv-51, 2019 WL 122905, at *10 (D. Utah Jan. 7, 2019).

But "[t]he standard for proving unconscionability is high." *Gallegos v. LVNV Funding LLC*, 169 F. Supp. 3d 1235, 1245 (D. Utah 2016); *see also Resource Mgmt. Co. v. Weston Ranch & Livestock Co., Inc.*, 706 P.2d 1028, 1041 (Utah 1985) ("[T]he standard for determining unconscionability is high, even if not precise."). And Plaintiffs have failed to allege any facts specifically demonstrating unconscionability, must less any facts that would rise to the level of "extreme unfairness" required to constitute unconscionability. *Morrison*, 2019 WL 122905, at *10 (quoting *Unconscionability*, BLACK'S LAW DICTIONARY (10th ed. 2014)); *Woodhaven Apts. v. Washington*, 942 P.2d 918, 925 (Utah 1997) (citing prior Utah Supreme Court cases holding that unconscionability applies to situations that "shock the conscience" or engender a "profound sense of injustice." (citations omitted)). Accordingly, Plaintiffs have failed to state a claim that Defendants acted unconscionably under the UCSPA.

---

but the misrepresentation must be knowing or intentional. As noted above, Plaintiffs fail to allege that Defendants acted knowingly or intentionally.

Because Plaintiffs have failed to adequately allege that Defendants knowingly or intentionally engaged in deceptive acts, or engaged in unconscionable conduct, the court DISMISSES Plaintiffs' cause of action under the UCSPA.

## III.   DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs' amended complaint requests wide-ranging declaratory and injunctive relief predicated on their substantive claims under the FDCPA and UCSPA. Per the court's analysis above, Plaintiffs' only remaining statutory claim falls under the FDCPA. But the FDCPA does not provide for equitable relief. Because the court dismisses the UCSPA claims, Plaintiffs can no longer predicate their injunctive and declaratory relief claims on their UCSPA substantive claim—which would provide for injunctive relief. *Long v. Wells Fargo Bank, N.A.*, 670 F. App'x 670, 671 (10th Cir. 2016) (unpublished) ("Because [the plaintiff's] substantive claims have failed, his request for declaratory relief in relation to those claims is not viable."); *Lund v. CitiMortgage, Inc.*, No. 2:10-cv-1167, 2011 WL 1873690, at *3 (D. Utah. May 17, 2011) (dismissing Plaintiffs' requests for declaratory and injunctive relief where "these claims are dependent on Plaintiffs' substantive claims" that the court dismissed for failing to state a claim). Accordingly, the court DISMISSES Plaintiff's third claim for declaratory judgment and injunctive relief.

## IV.   LEAVE TO AMEND

During oral argument, counsel for Plaintiffs orally moved for leave to amend in the event that the court granted the motion to dismiss. Amendments that are not permitted as a matter of course under Rule 15(a)(1) of the Federal Rules of Civil Procedure require written consent from the opposing party or leave of the court. FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "Refusing leave to amend is generally only justified upon a

showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted).

Here, Plaintiffs suggest that they can assert new allegations that would demonstrate that Defendants acted knowingly or intentionally in misrepresenting their licensing status to Plaintiffs. Therefore, the court GRANTS Plaintiffs twenty-one days from the date of this order to amend their complaint, if they can, to allege facts showing why Defendants' actions constitute deceptive or unconscionable acts under the UCSPA.

## CONCLUSION

The court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss. The court DISMISSES Plaintiffs' second cause of action under the UCSPA and Plaintiff's third cause of action for declaratory and injunctive relief. The court DENIES Defendants' motion to dismiss as to Plaintiffs' first cause of action under the FDCPA. The court grants Plaintiffs twenty-one days from the date of this order to amend their complaint to state a claim for relief under the UCSPA.

DATED February 15, 2022.

BY THE COURT

Jill N. Parrish
United States District Court Judge

22