Daniel Baczynski
BACZYNSKI LAW, PLLC
12339 S. 800 E. Ste. 101
Draper UT 84020
(708) 715-2234
dan@bskilaw.com
<u>Attorney for Plaintiff</u>

**IN THE UNITED STATES DISTRICT COURT
STATE OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| AUGOSTO COTTE and MERCEDES HIDALGO, *on behalf of themselves and a class of similarly situated individuals,* <br><br> Plaintiff, <br><br> vs. <br><br> CVI SGP ACQUISITION TRUST, CVI SGP-CO ACQUISITION TRUST; and JOHN DOES 1-10, <br><br> Defendants. | **SECOND AMENDED COMPLAINT** <br><br> **JURY TRIAL DEMANDED** <br><br> Case No: 2:21-cv-00299 <br><br> Judge: Parrish |

Plaintiffs Augosto Cotte and Mercedes Hidalgo (together "Plaintiffs"), by and through their attorney of record, Baczynski Law, make a demand for a jury trial and complain of Defendant as follows:

<u>**JURISDICTION AND VENUE**</u>

1. This Court has federal question jurisdiction over the Fair Debt Collection Practices Act claims.

2. Venue is proper because the cause of action arose in the State of Utah.

3. Defendants are subject to personal jurisdiction within the State of Utah because Defendants

1

engage in debt collection activities within the State of Utah.

## PARTIES

4.  Plaintiffs were at all times relevant a resident of the State of Utah.

5.  Defendant CVI SGP ACQUISITION TRUST (CVI SGP) is a Delaware Statutory Trust.

6.  Defendant CVI SGP-CO ACQUISITION TRUST (CVI SGP-CO) is also a Deleware Statutory Trust.

7.  Defendants (together "CVI") are collection agencies.

8.  Defendants CVI engage in debt collection throughout the State of Utah.

9.  John Does 1-10 are the employees and officers of CVI who facilitated or oversaw unlawful debt collection.

10. CVI are "debt collectors" as defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a (6).

11. None of the exceptions to the term "debt collector" under the FDCPA apply to CVI.

## GENERAL ALLEGATIONS

12. This case has to do with the prosecution of bogus debt collection actions by Defendants CVI when it did not have the right to engage in the business of debt collection in the State of Utah. In furtherance of its debt collection business, CVI improperly filed actions before courts in Utah to obtain judgments against the Plaintiff. CVI achieved their goal through the use of high volume, repeat cases which have clogged the courts and to obtain its bogus judgments through the use of non-compliance with Utah laws regulating debt collection. By using the court system for its improper purposes, CVI have been unjustly enriched and permitted to engage in the business of debt collection in Utah when it was not licensed to do so.

13. Without the mandatory license CVI were not legally entitled to payment on the notes and had suffered no protectable injury which was required for it to obtain the jurisdiction of the state courts. The failure to object to CVI's unlawful conduct by the class members who either defaulted or consented to judgment does not impact this rule.

14. In a similar matter before the U.S. District Court of Maryland involving the Defendant, *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 369 (D. Md. 2010), the Honorable Catherine C. Blake found that the plaintiffs in that action, who are not Class members, were permitted to pursue claims against LVNV under federal and state law "when it filed complaints in Maryland state court against…the putative class members [when]…LVNV had failed to become licensed as a "collection agency" by the Maryland Commissioner of Financial Regulation prior to filing the lawsuits, as required by Maryland law, Md. Code Ann., Bus. Reg. § 7–301."

15. Plaintiffs allege that part of the injuries sustained by the class as a result of state court actions pursued by CVI and judgments obtained against them include the assessment and threatened garnishment of a purported debt sum, interest, and costs (including attorney fees) against them. The damage arose from the existence of the judgments reflecting a judgment that is unenforceable and/or the enforcement of the judgments by garnishment, or payments collected through threat based on the judgments, which caused, actually and proximately, the injury for which the Plaintiffs seeks redress.

## FACTS

### The Proliferation of Debt Collection Irregularities

16. This case arises from a systematic, intentional, and predatory debt collection business of Defendants CVI against vulnerable Utah consumers without the mandatory license

required by the State of Utah.

17. Defendants CVI allegedly acquires consumer debts in default for pennies on the dollar and then engages in the business of debt collection including trying to collect the debt by filing lawsuits before Utah courts when it did not have the legal authority to engage in the business of debt collection in the State of Utah. CVI continues to operate without a license thus (i) skirting the requirements easily complied with by other similarly situated companies engaged in the business of debt collection in Utah, which provided CVI an improper advantage over those who followed the law and (ii) avoiding the mandatory protections intended for Utah consumers by the legislature and regulatory authority.

18. The non-partisan Government Accounting Office (GAO) recently summarized public enforcement of this kind of scheme as follows:

our analysis of information provided by the National Association of Attorneys General found at least 60 enforcement actions were taken by state attorneys general against debt collection companies from January 2006 through May 2009, of which 28 involved or may have involved the collection of credit card debt. These actions alleged a variety of illegal debt collection practices, such as deducting money from consumers' bank accounts without authorization, **operating in states without proper licenses**, and refusing or failing to provide consumers with proof of their debts. Generally, state attorneys general either negotiated a settlement with the debt collection company or brought a court action against the company. Settlements included penalties such as refunds to consumers, cancellation of consumers' debts, civil penalties, and injunctive relief aimed at preventing future collection violations.

GAO Report, Fair Debt Collection Practices Act Could Better Reflect the Evolving Debt Collection Marketplace and Use of Technology, September 2009 (available at http://www.gao.gov/new.items/d09748.pdf) at Pages 38-39 (emphasis added).

19. CVI are a "collection agency, bureau, or office" as defined by Title 12 Collection Agencies. CVI directly participated in collection efforts by filing lawsuits, providing documents relating to the lawsuits and otherwise acting through its authorized agents to collect consumer debts.

### Utah's Licensing Requirements for a Debt Collector License

20. Utah Code Ann. 12-1-1 provides:

*No person shall conduct* a collection agency, collection bureau, or collection office in this state, or engage in this state in the business of soliciting the right to collect or receive payment for another of any account, bill, or other indebtedness, or advertise for or solicit in print the right to collect or receive payment for another of any account, bill, or other indebtedness, *unless at the time of conducting the collection agency*, collection bureau, collection office, or collection business, or of advertising or soliciting, *that person or the person for whom he may be acting as agent, is registered with the Division of Corporations and Commercial Code and has on file a good and sufficient bond as hereinafter specified.*

(Emphasis added)

21. Utah Code Ann. §§ 12-1-1 and 12-1-2 "are designed to protect consumers and are important enough that violating them is a class A misdemeanor". *Garner v. Asset Mgmt. Assocs., Inc.*, No. 2:10-cv-00965 CW, 2011 U.S. Dist. LEXIS 145981, at *3 (D. Utah Dec. 20, 2011).

22. CVI did not have the mandatory license required by Utah law but continued their business of collecting debts acquired in default and filing collection lawsuits in Utah courts without the lawful ability to do so.

23. "[A] credit collection agency violates Utah law when it files suit to collect debts while unregistered with the State according to the provisions of the UCAA" *Buhler v. BCG Equities, LLC*, No. 2:19-CV-00814-DAK, 2020 WL 888733, at *2 (D. Utah Feb. 24, 2020), reconsideration denied, No. 2:19-CV-00814-DAK, 2020 WL 2085247 (D. Utah Apr. 30, 2020).

24. Utah courts are forbidden from assisting an unlicensed actor from securing a recovery - even an equitable recovery. *Mosley v. Johnson*, 22 Utah 2d 348, 351 - 353, 453 P.2d 149, 151 (Sup.Ct. 1969) ("A court will no more assist one who fails to secure a required license to recover money by means of a lien foreclosure than it will in an action on the

contract or on a theory of quantum meruit").

25. Upon information and belief, CVI engaged directly in collection activities on at least 40 occurrences in the State of Utah during the last four years by sending letters, making phone calls, and taking actions, in the form of collection lawsuits, to collect debts from Utah consumers.  In these lawsuits CVI actively and directly participate by acting as the named party in the litigation and providing purported affidavits and other papers in support of the complaint to the state courts.

### Facts Related to Plaintiff Cotte

26. Without the legal right or Collection Agency license to do so, on May 15, 2020, CVI SGP-CO continued its business of collecting debts when it filed a consumer debt collection action against Plaintiff Cotte styled as *CVI SGP-CO Acquisitions Trust v. Cotte, Augosto*, Case No. 200902872 ("Debt Collection Action").

27. At the time of filing of the Debt Collection Action, CVI SGP-CO did not have a license as a Collection Agency as required under Utah law.

28. CVI SGP-CO pursued a debt related to a consumer transaction – a Sterling Jewelers debt that was not incurred for a business purpose.

29. In its complaint, CVI SGP-CO failed to identify that the debt was assigned from the creditor to CVI SGP-CO or that CVI SGP-CO was not licensed to engage in debt collection in the State of Utah.

30. Plaintiff Cotte relied on the material omissions and believed CVI SGP-CO had the legal right to collect the debt.

31. In the Debt Collection Action the State Court did not determine if CVI SGP-CO had any right to pursue debt collection in the State.

32. On June 16th, 2020, the State Court entered a default judgment against Cotte for $1,951.86.

33. Plaintiff has suffered emotional distress as a result of the litigation pursued by Defendant.

34. Defendant's litigation has caused Plaintiff anxiety and distress that has resulted in physical manifestations.

35. Moreover, the default judgment harms Plaintiff's credit rating and Plaintiff's ability to obtain credit.

## Facts Related to Plaintiff Hidalgo

36. Without the legal right or Collection Agency license to do so, on August 10, 2020, CVI continued its business of collecting debts when it filed a consumer debt collection action against Plaintiff Hidalgo styled as *CVI SGP Acquisitions Trust v. Hidalgo, Mercedes*, Case No. 200301071 ("Debt Collection Action").

37. At the time of filing of the Debt Collection Action, CVI SGP did not have a license as a Collection Agency as required under Utah law.

38. CVI SGP pursued a debt related to a consumer transaction – a Sterling Jewelers debt that was not incurred for a business purpose.

39. In its complaint, CVI SGP failed to identify that the debt was assigned from the creditor to CVI SGP or that CVI SGP was not licensed to engage in debt collection in the State of Utah.

40. Plaintiff Hidalgo relied on the material omissions and believed CVI SGP had the legal right to collect the debt.

41. In the Debt Collection Action the State Court did not determine if CVI SGP had any right to pursue debt collection in the State.

42. On September 14th, 2020, the State Court entered a default judgment against Hidalgo for $2,543.68.

43. On October 6th, 2020, Defendant pursued and obtained a Writ of Continuing Garnishment.

44. Plaintiff has suffered emotional distress as a result of the litigation pursued by Defendant.

45. Defendant's litigation has caused Plaintiff anxiety and distress that has resulted in physical manifestations.

46. Moreover, the default judgment harms Plaintiff's credit rating and Plaintiff's ability to obtain credit.

## FIRST CLAIM FOR RELIEF
### *Violation of the FDCPA 1692e & f*
*Individually and On Behalf of a Class*

47. Plaintiffs incorporate by reference all preceding paragraphs.

48. Defendants engaged in unfair and deceptive acts and practices in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10) and 1692f, by engaging in an action that cannot legally be taken where CVI pursued debt collection in Utah without the necessary Collection License .

49. Section 1692e provides:

**§1692 e.        False or Misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:…**

**(2) The false representation of—**

**(A) The character, amount, or legal status of any debt;…**

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken…**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer…**

50.    Section 1692f provides:

**§ 1692f.        Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt…**

51. In *Garner v. Asset Mgmt. Assocs., Inc.,*[1] the Utah District Court found:

> the FDCPA expressly prohibits a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Because a person cannot lawfully attempt to collect a debt in Utah unless  they are registered and bonded, the court concludes that failing to register may "support a federal cause of action under Section 1692e(5) of the FDCPA," *if* a person threatens "to take an action it could not legally take." *LeBlanc,* 601 F.3d at 1192.

52.  By filing debt collection lawsuits without a license, CVI took action they could not legally take in violation of the FDCPA.

## SECOND CLAIM FOR RELIEF
### *Violation of the Utah Consumer Sales Practice Act*
### *Individually and On Behalf of a Class*

53. Plaintiffs incorporate the foregoing allegations.

54. The Utah Consumer Sales Practices Act is to be construed liberally to protect consumers from suppliers who commit deceptive and unconscionable sales practices and to protect suppliers who in good faith comply with the provisions of this act. UTA § 13-11-2(2) and (6).

55. Defendants CVI's practice of collecting debts without a license as required in Utah is a

---

[1] No. 2:10-cv-00965 CW, 2011 U.S. Dist. LEXIS 145981, at *3 (D. Utah Dec. 20, 2011).

deceptive and unconscionable practice designed to take advantage of consumers who may not know that CVI is required and has not acquired the proper license to collect debts in Utah. Defendant did not disclose that it did not have the requisite license when it attempted to collect on debts from Utah consumers.

56. By attempting to collect debts without a disclosure that it did not have a license to do so, the least sophisticated consumer would be led to believe CVI had the legal right to collect debts in the State of Utah.

57. CVI represented in their debt collection complaints that a balance is duly owing to CVI when they were not licensed.

58. Plaintiffs interpreted these statements, and omissions regarding CVI's licensure, as an affirmative representation that CVI were fully licensed and authorized to engage in debt collection within the state of Utah.

59. Plaintiffs relied on Defendants CVI's misrepresentations regarding its right to collect on the debt to their detriment.

60. Defendants CVI's practice of representing themselves as licensed debt collectors through the service of complaints, filing of debt collection lawsuits, affirmative representations to debtors and courts that it has the legal right to collect on the debts is a per se deceptive practice pursuant to R152-11-5(B)(5).

61. Defendants CVI also received an unfair advantage over other suppliers who follow the law and either go to the cost and expense of attaining compliance with Utah's laws or do not collect debts in Utah.

62. Defendants CVI purposefully engaged in these activities knowingly and intentionally to harm consumers and gain an advantage over its competitors.

63. Throughout the last decade, FDCPA litigation surrounding unlicensed/unregistered debt collectors has been widespread.

64. The seminal case, *Leblanc v. v. Unifund CCR Partners*, adjudicated out of the 11th Circuit in 2010, represented the first federal appellate decision finding unlicensed debt collection violated the FDCPA. 601 F.3d 1185, 1187 (11th Cir. 2010).

65. Subsequently, FDCPA cases involving unlicensed det collection were pursued across the country with great success, including a $38 million jury verdict out of Maryland for a class of 1,589 members.[2]

66. Consequently, debt collectors gained a new appreciation for compliance with state licensing laws, resulting in widespread registration within the industry.

67. As a debt collector, CVI would have known about the increased focus in the industry regarding proper licensure.

68. Moreover, and as part of the litigation spree involving unlicensed actors, CVI's trustee Wilmington Savings Fund Society, FSB was sued back on March 5, 2018 (before CVI began filing debt collection lawsuits in Utah) for operating a different trust without a mortgage servicer license. See *Sharma v. Rushmore Loan Mgmt. Servs.*, Case No.: GJH-18-656, 16 (D. Md. Mar. 20, 2020). While the case was ultimately dismissed because the trust was found in compliance with state law, the litigation put CVI's trustee on notice that debt collection requires licensure in some instances.

69. Despite knowledge of state licensure requirements governing debt collectors, CVI has unlawfully pursued debt collection in several states in violation of said licensure requirements, including (but not limited to): North Dakota, Texas, Michigan, Georgia, and New Jersey.

---

[2] Available at: https://www.wbaltv.com/article/jury-hits-debt-collector-with-38m-judgment/7100781#. *Finch v. LVNV* was ultimately reversed on appeal and remanded for a new trial.

70. CVI also filed thousands of lawsuits in Florida following the 11th Circuit's decision in *Leblanc v. Unifund CCR Partners* highlighting Florida's debt collection licensure laws and finding unlicensed debt collection violates the FDCPA.

71. CVI has purposefully elected to broadly pursue debt collection without first obtaining necessary state licensed, even though in its purchase agreement with Zales (the primary creditor from which CVI collects debt) CVI explicitly represents that it "holds all licenses to purchase the Receivables under this Agreement necessary to ensure the enforceability of the Receivables".

72. CVI has filed over a hundred different debt collection lawsuits in the State of Utah within the last few years.

73. CVI was not licensed when it first began collecting debts in Utah.

74. On March 5th, 2020, Judge Shelby issued a published decision finding Utah Code § 12-1-1's registration requirements applied to debt buyers. This decision was widely reported by companies specializing in debt collection legal compliance.[3]

75. After the *Lawrence* decision, CVI continued to collect debts in Utah, filing some 70+ lawsuit without first registering as a collection business.

76. Even after Plaintiffs filed the present action, CVI did not register as a debt collector. Rather, CVI appears to have sold its portfolio of debts to LVNV - another debt collector.

77. CVI filed motions in all active debt collection cases informing the courts that it had sold the debt to LVNV and requesting LVNV's substitution in the matter.

---

[3] Some of these publications can be found at the following: https://www.accountsrecovery.net/2020/03/16/utahcourt-rules-debt-buyer-must-register-under-state-collection-agency-law/; https://cornerstonesupport.com/utah-court-weighs-in-on-debt-buyer-licensing-requirements/; https://www.consumerfinancialserviceslawmonitor.com/wp-content/uploads/sites/501/2020/03/Lawrence-v-FirstFinancial.pdf;

78. CVI, however, purposefully elected not to inform any Utah courts or consumers of the present suit or its prior non-compliance with Utah Code § 12-1-1 to avoid consumer's raising a defense or requesting the judgments be set aside.

79. Defendants CVI should be ordered to disgorge all sums collected from Plaintiffs' Class which CVI obtained improperly against Plaintiffs and the Class while it acted illegally as a collection agency without a license. Plaintiffs and the Class are also entitled to statutory damages of $2,000 under the Utah Consumer Sales Practice Act for the harm caused by CVI's attempts to unlawfully collect on a debt.

## CLASS ALLEGATIONS

80. Plaintiffs bring this claim on behalf of two classes pursuant to Rule of Civil Procedure 23(a) and 23(b)(3).

81. The "FDCPA Class" consists of (a) all individuals in Utah (b) against whom CVI (c) sent a letter or filed a lawsuit to collect a debt (d) which letter was sent or litigation was commenced between April 10, 2020, and the present.

82. The "Utah Class" consists of (a) all individuals in Utah (b) against whom CVI (c) sent a letter or filed a lawsuit to collect a debt (d) which letter was sent or litigation was commenced between April 10, 2016, and the present.

83. On information and belief, the classes are so numerous that joinder of all members in not practicable. The information relating to the precise number of persons who fall within the respective classes is within the control of the Defendant.

84. There are questions of law and fact common to the members of each class, which common questions predominate over any questions relating to individual class members. The predominant common questions are (a) whether Defendant could lawfully pursue debt

collection in Utah without the necessary collection license; (b) whether Defendant could lawfully pursue litigation in Utah without the necessary collection license; (c) whether pursuing debt collection generally without the necessary collection license constitutes a violation of the FDCPA or UCSPA; (d) whether pursuing litigation in an effort to collect a debt without the necessary collection license constitutes a violation of the FDCPA and (c) whether such practices violate the Utah Consumer Sales Practices Act.

85. Plaintiffs' claims are typical of the claims of the respective class members. All are based on the same factual and legal theories.

86. Plaintiffs will fairly and adequately represent the members of each class. Plaintiffs has retained counsel experienced in consumer class actions and FDCPA litigation.

87. A class action is superior for the fair and efficient adjudication of the claims of the Classes, in that:

   a. Individual actions are not economically feasible;

   b. Members of the class are likely to be unaware of their rights;

   c. Congress intended class actions to be an enforcement mechanism under the FDCPA;

   d. The Utah Legislature intended class actions to be an enforcement mechanism under the UCSPA.

   WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class members and against Defendant for:

   (1) Certify the FDCPA Class and appoint Plaintiffs as the class representatives and their counsel as class counsel;

   (2) Certify the Utah Class and appoint Plaintiffs as the class representatives and their counsel as class counsel;

14

(3) Award the FDCPA Class statutory damages and actual damages consisting of any

    amount collected by the Defendant;

(4) Grant the Utah Class statutory damages, punitive damages, declaratory, and injunctive

    relief against Defendant to stop Defendant from harming consumers and providing them

    with an unfair advantage over its competitors by engaging in collection efforts without a

    license; including a preliminary and permanent injunction;

(5) Award Plaintiffs their actual or statutory damages in an amount to be determined at trial;

(6) Attorney's fees, litigation expenses, and cost of suit; and

(7) Such other and further relief as the Court deems proper.

        DATED this March 8, 2022.

                        BACZYNSKI LAW


                        /s/      Daniel Baczynski
                        Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I hereby certify that on this March 8, 2022, I hereby filed a true and accurate copy of the

Second Amended Complaint with the Court electronically through its ECF service, with service

provided automatically to all counsel of record.


/s/ Daniel Baczynski