Daniel Baczynski, Bar No. 15530
BACZYNSKI LAW, PLLC
136 12300 S., Ste B
Draper, UT 84020
(708) 715-2234
dan@bskilaw.com
<u>Attorney for Plaintiff</u>

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AUGOSTO COTTE and MERCEDES HIDALGO, *on behalf of themselves and a class of similarly situated individuals,*<br><br>Plaintiff,<br><br>vs.<br><br>CVI SGP ACQUISITION TRUST, CVI SGP-CO ACQUISITION TRUST; and JOHN DOES 1-10,<br><br>Defendants. | **MOTION FOR FINAL APPROVAL OF A SETTLEMENT CLASS AND MEMORANDUM IN SUPPORT**<br><br>Case No: 2:21-cv-00299<br><br>Judge: Parrish |

Plaintiffs Augosto Cotte and Mercedes Hidalgo (together "Plaintiffs"), by and through their attorney of record, Baczynski Law, submits this Motion and Memorandum in support of her Motion for Final Approval of a Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").

### **<u>INTRODUCTION</u>**

The Court previously granted preliminary approval of a Settlement Class between the Plaintiffs and the Defendants. (ECF 46) ("Preliminary Approval Order"). The only additional information for the court to consider is that no class member has objected to the settlement or asked to opt out, indicating class support for the settlement. As shown below, the Court should

1

grant final approval for the class because all of the requirements of Rule 23 have been met and the settlement is fair, adequate and reasonable.

### I. The Requirements of Rule 23(a) Are Met.

In the prior motion for preliminary approval, and the Court's order granting that motion, the four requirements to Rule 23(a) were addressed.[1] The prior motion and order established the following: 167 class members make joinder impractical and established numerosity; the narrow claims asserted under the Utah Consumer Sales Practices Act and the Fair Debt Collection Practices Act present common questions for the class; and Plaintiff's claims under those laws are typical of the claim of the class. Finally, the Court found Plaintiffs adequate to serve as class representatives and their counsel competent to serve as class counsel.

### II. The Requirements of Rule 23(b)(3) Are Met.

The prior motion and order also addressed the predominance and superiority requirements of Rule 23(b)(3). The common questions for the class claim are also the predominant questions in this case. The question of whether the Defendant engaged in deceptive and unconscionable acts when it pursued debt collection without first registering as a collection business under Utah Code § 12-1-1 provides an answer to all class members' claims. And there are no individual issues as to damages because all class members are treated the same. All class members will share pro rata in the monies that will be paid by Defendants, less any award of an incentive payment and costs and fees for class counsel. Resolving the claims in a single action rather than repetitive actions that present the same cause of action and request the same damages also establishes the superiority of allowing them to be resolved on a class basis.

---

[1] Plaintiffs incorporate by reference the motion for preliminary approval. (ECF 46).

### III. The Class Was Provided Notice.

Pursuant to the Preliminary Approval Order, the settlement administrator sent out the notices approved by the Court to the class members. See Declaration of Settlement Administrator, Exhibit A. The notices were sent by first class mail to the last known address available to Defendants. Out of 167 letters initially mailed out, less than 15% (21 letters) were returned as undelivered. The class administrator then searched for updated addresses for all class members whose notices were returned and mailed out a second letter if new addresses were found. Letters were mailed to 15 of the 21 class members who previously did not receive notice.

In total, letters were successfully sent to 161 of 167 class members – 96% of the class. Though some notices were ultimately undeliverable to a small percentage of the class members, efforts to provide notice to the class were done in good faith using the best practicable methods under the circumstances. *See Montgomery v. Cont'l Intermodal Grp.-Trucking LLC*, No. 19-940 GJF, 2021 U.S. Dist. LEXIS 68946, at *15 (D.N.M. Apr. 9, 2021) (granting final settlement approval and concluding that notice by mail, with returned mail re-sent after searching for updated addresses, constituted "the best notice practicable under the circumstances, and complied with the requirements of the Federal Rules of Civil Procedure and due process").

### IV. Class Members Were Provided An Opportunity To Opt Out And No Class Member Opted Out.

Rule 23 requires any notice to the class members include an opportunity to opt out under 23(c)(2)(B)(v). Notices to all class members were mailed out on March 17, 2023. The notice informed the class members of their right to opt out and provided an exclusion deadline of May 13, 2023. No class members have elected to opt out. See Exhibit B, List of Class Members remaining in Class.

### V. There Have Been No Objections.

In addition to advising the class members they could opt out, the class members were also advised that they could assert objections to the proposed settlement. Again, notices to all class members were mailed out on March 17, 2023. The notice informed the class members of their right to object with an objection deadline of May 18, 2023. No class member has objected to the settlement.

### VI. The Settlement Remains Fair, Adequate and Reasonable.

The settlement meets the four-part test under Rule 23 set forth in *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).[2] The settlement was honestly negotiated, at arm's length, and was reached after extensive litigation including a contested motion to dismiss. The settlement provides substantial relief to the class including a pro rata common fund of $152,000 to the 167 class members. The settlement gives the above substantial relief, including relief which may not have been available through this litigation.

Considering the settlement, any question over the ultimate outcome of the litigation is not as significant here. However, it is still worth mentioning the risks to the class moving forward without an amicable resolution. Several courts have dismissed similar claims on various grounds

---

[2] The four parts are:
    (1) whether the proposed settlement was fairly and honestly negotiated;
    (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
    (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
    (4) the judgment of the parties that the settlement is fair and reasonable.

including res judicata[3], petition clause[4], and that unregistered collection simply is not deceptive or unconscionable[5]. These cases are on appeal and a negative opinion could torpedo the case. It is likely that any result in favor of the class would be subject to an appeal in light of the above decisions and appeals. Due to the uncertainty involved, an immediate recovery outweighs the potential for a far more favorable outcome in the future.

Consequently, the settlement submitted is fair and reasonable. Moreover, no class member has voiced any objections to the settlement or has opted out of the settlement, further suggesting that the settlement is a just and adequate resolution.

### VII. The Parties Propose the Cy Pres (if any) should be given to Utah Legal Services.

"The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries."[6] If any of the settlement funds are not collected by the Class Members, the parties propose the cy pres be given to Utah Legal Services to bolster its debt collection defense services. Utah Legal Services assists the disadvantaged and those of limited means with legal representation in various matters including debt collection.[7] Access to counsel promotes greater accountability by collectors and

---

[3] *McMurray v. Forsythe Fin., LLC*, No. 1:20-CV-8 TS, 2021 WL 83265, at *2–3 (D. Utah Jan. 11, 2021).

[4] *Holmes v. Crown Asset Mgmt., LLC*, No. 2:19-CV-00758, 2021 WL 3473050, at *1 (D. Utah Aug. 6, 2021).

[5] *Buhler v. BCG Equities, LLC*, No. 2:19-CV-00814-DAK, 2020 WL 888733, at *4–5 (D. Utah Feb. 24, 2020), *reconsideration denied*, No. 2:19-cv-00814-DAK, 2020 WL 2085247 (D. Utah Apr. 30, 2020).

[6] *Allred v. ReconTrust Co., N.A.*, 787 F. App'x 994, 995 (10th Cir. 2019)

[7] See Utah Legal Services' website at: https://www.utahlegalservices.org/node/20/what-types-legal-problems-does-uls-help.

encourages compliance with consumer protection statutes. Accordingly, Utah Legal Services is an appropriate recipient for the cy pres.[8]

### VIII. The Parties Propose an Incentive Award of $4,500 each for the Class Representatives.

"At the conclusion of a class action, the class representatives are eligible for a special payment in recognition of their service to the class". § 17:3. Rationale for incentive awards, 5 Newberg on Class Actions § 17:3 (5th ed.). These payments, sometimes referred to as incentive awards, work "[1] to compensate class representatives for work done on behalf of the class, [2] to make up for financial or reputational risk undertaken in bringing the action, [3] to recognize their willingness to act as a private attorney general, and [4] incentivize class members to step forward on behalf of the class". *Id*.

The Tenth Circuit has endorsed that class representatives should be compensated for the "time and effort invested in the case", including "monitoring class counsel… keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). This Court has previously recognized that financial risks for fees and costs are also a factor to be considered when evaluating a request for an incentive award. *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2021 WL 1688540, at *7 (D. Utah Apr. 29, 2021). Weighing these factors, courts in the Federal District for Utah have awarded incentive fees varying between $2,500 and $15,000 per class representative.[9]

---

[8] See *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 59 (W.D.N.Y. 2018) (approving cy pres to New York Legal Services in FDCPA case); *Bonner v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 2:04 CV 440, 2005 WL 8170107, at *1 (N.D. Ind. Oct. 26, 2005) (same).

[9] See *Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2021 WL 1688540, at *7 (D. Utah Apr. 29, 2021); *Campbell v. C.R. England, Inc.*, No. 2:13-CV-00262, 2015 WL 5773709, at *8 (D. Utah Sept. 30, 2015); *Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc.*, No.

Here Plaintiffs Cotte and Hidalgo faced risk for fees and costs in bringing her claim. Both the FDCPA and the UCSPA potentially allow defendants to recover attorneys fees and costs.[10] At the time they brought this suit, multiple state and federal courts had already dismissed identical cases on various grounds.[11] Upon prevailing, one debt collector requested fees and costs of over $38,000 on the grounds the case was filed in bad faith.[12] Counsel kept Plaintiffs up-to-date on these cases and the risks inherent in continued litigation and they elected to proceed with the case despite the potential for negative repercussions.

Additionally, Plaintiffs spent time monitoring the case and assisting when needed. Counsel had frequently phone calls with Plaintiffs regarding the status of litigation and negotiations. *Id*. Plaintiffs guided major decisions in the two-year litigation and were intimately involved in settling the matter. *Id*. Given the risks and her time and effort, the parties propose an incentive award of $4,500 each for Plaintiffs Cotte and Hidalgo, paid from the Common Fund.

**IX.     Attorneys Fees, Litigation Costs, and Administration Fees.**

The Parties also ask that, pursuant to the Settlement Agreement, Attorneys Fees, Litigation Costs, and Administration Fees be paid out of the Common Fund. These specific requests are briefed in full in a separate motion for fees and costs.

---

2:02 CV 950, 2014 WL 3943994, at *2 (D. Utah June 19, 2014)

[10] See Utah Code § 13-11-19(5)(a) ('the court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed if: the consumer complaining of the act or practice that violates this chapter has brought or maintained an action he knew to be groundless"); 15 U.S.C. § 1692l(a)(3) (On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs).

[11] See Exhibit C.

[12] See Exhibit D.

7

## XI. CONCLUSION

For the above reasons, the Plaintiffs request that the Court enter an Order finally approving the class settlement.

DATED this May 25, 2023.

                                                  **BACZYNSKI LAW, PLLC**

                                                  /s/ Daniel Baczynski
                                                  Counsel for Class and Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this May 25, 2023, I hereby filed a true and accurate copy of Plaintiffs' **MOTION FOR FINAL APPROVAL OF A SETTLEMENT CLASS AND MEMORANDUM IN SUPPORT** electronically through its ECF service, with service provided automatically to all counsel of record.

/s/ Daniel Baczynski