IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AUGUSTO COTTE and MERCEDES HIDALGO,<br><br>Plaintiffs,<br>v.<br><br>CVI SGP ACQUISITION TRUST; CVI SGPCO ACQUISITION TRUST; and JOHN DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER PARTIALLY GRANTING AND PARTIALLY DENYING FINAL APPROVAL OF SETTLEMENT CLASSES**<br><br>Case No. 2:21-cv-00299-JNP-DAO<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

Augusto Cotte and Mercedes Hidalgo ("Plaintiffs") move the court for final approval of two settlement classes in their action against CVI SGP Acquisition Trust and CVI SGPCO Acquisition Trust ("Defendants"). Having reviewed Plaintiffs' filing and conducted a fairness hearing, the court PARTIALLY GRANTS and PARTIALLY DENIES their motion.

## BACKGROUND

The court previously granted preliminary approval of two settlement classes on February 2, 2023. ECF No. 46. The court defined the two classes as follows:

- **FDCPA Class:** All individuals; against whom a Defendant filed a debt collection lawsuit; where the lawsuit was filed in Utah; to collect a "debt" as defined by 15 U.S.C. § 1692(a)(5); while said Defendant was unregistered as a debt collector pursuant to Utah Code § 12-1-1; and where the lawsuit was filed between April 10, 2020, and the date of entry of this court's preliminary settlement approval order.

- **UCSPA Class:** All individuals; against whom a Defendant filed a debt collection lawsuit; where the lawsuit was filed in Utah; to collect a debt incurred in connection

> with a "consumer transaction" as defined by Utah Code § 13-11-3(2); and where the lawsuit was filed between April 10, 2016, and the date of entry of this court's preliminary settlement approval order.

ECF No. 47.

Following the court's order of preliminary approval, the class administrator sent notices via first class mail to all class members at the last known address available to Defendants. ECF No. 50 at 1. Out of 167 letters initially mailed out, fewer than 15% (21 letters) were returned as undelivered. *Id*. The class administrator then searched for updated addresses for all class members whose notices were returned and mailed out a second letter if new addresses were found. *Id*. at 1-2. Letters were mailed to 15 of the 21 class members who previously did not receive notice. *Id*. at 2. In total, letters were successfully sent to 161 of 167 class members. *Id*.

The notice informed the class members of their right to opt out and provided an exclusion deadline of May 13, 2023. *Id*. As of this deadline, no class member has elected to opt out. *Id*. (citing ECF No. 50-1). The notices further advised the class members that they could assert objections to the proposed settlement by May 18, 2023. *Id*. at 2. As of this deadline, no class member has elected to object to the settlement. *Id*. (citing ECF No. 50-1).

On May 25, 2023, Plaintiffs moved for final approval of the settlement classes. This motion was unopposed. ECF No. 51. On June 15, 2023, the court held a final fairness hearing to examine whether to approve the classes. At this hearing, the court requested that the parties submit a memorandum on the issue of whether the court had legal authority to grant an incentive award of $4,500 to each of the class representatives. On June 18, 2023, Plaintiffs filed a memorandum responding to the court's request. ECF No. 56. On June 20, 2023, Defendants filed a notice of non-opposition to this memorandum. ECF No. 57.

## LEGAL STANDARD

A court may approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition to the four factors set forth under Rule 23(e)(2), the Tenth Circuit requires that courts consider the following four *Rutter* factors in making their fairness determination: (1) whether the settlement was fairly and honestly negotiated; (2) whether serious legal and factual questions place the litigation's outcome in doubt; (3) whether the immediate recovery is more valuable than the mere possibility of a more favorable outcome after further litigation; and (4) whether the parties believe the settlement is fair and reasonable. *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

## ANALYSIS

### I.   FINAL APPROVAL OF CLASS SETTLEMENT

The parties contend that this class settlement meets the requirements of Rule 23(e)(2) and *Rutter*. 314 F.3d at 1188. The court agrees.

As an initial matter, this court held a final fairness hearing on June 15, 2023, as required under Rule 23(e)(2). Nothing during this hearing gave the court cause to doubt the fairness,

reasonableness, or adequacy of the class settlement. The following holdings are informed by the parties' representations at that hearing.

 First, the settlement meets the four-part test under Rule 23(e)(2) for the reasons articulated in the court's memorandum decision and order preliminarily certifying the settlement classes. ECF No. 46 at 14-17. It remains true that class counsel has adequately represented the class throughout the course of this matter. *Id*. at 14. The court still finds that the parties reached their settlement through arms-length negotiations. *Id*. at 11-12. The relief provided for the class remains adequate.[1] *Id*. at 15-16. And, finally, the settlement treats class members equitably relative to each other.[2] *Id*. at 16-17.

 Second, the settlement meets the four-part *Rutter* test for the reasons articulated in the court's memorandum decision and order preliminarily certifying the settlement classes. 314 F.3d at 1188; *Id*. at 11-14. As required by *Rutter*, the settlement was fairly and honestly negotiated. *Id*. at 11-12. Serious questions of law also still exist that would place the outcome of this litigation in doubt if it were to proceed to trial. *Id*. at 12. Moreover, the value of immediate recovery continues to outweigh the mere possibility of a more favorable outcome after further litigation. *Id*. at 13. And, finally, the parties remain convinced that the settlement is fair and reasonable. *Id*. at 14. The court is further convinced of this last point because no class member objected to or opted out of the class settlement. ECF No. 50-1.

---

[1] Rule 23(e)(2) requires the court to examine the terms of any proposed award of attorney's fees. The court has reviewed Plaintiffs' motion for attorney's fees, ECF No. 53, and finds the requested fees unobjectionable. The awarding of fees is detailed in a separate memorandum decision and order filed simultaneously with this order.

[2] The court has concerns about its legal authority to issue the incentive fee proposed, but this does not undermine the fairness of the settlement class proposal.

4

## II.   SETTLEMENT MODIFICATIONS

In addition to arguing on behalf of the previously proposed settlement, the parties have also proposed two modifications to the settlement that do not substantially change its terms. The court addresses each modification in turn.

### A.   CY PRES

If any of the settlement funds are not collected by the class members or included in attorney's fees and costs, the parties propose the remainder–the cy pres–be given to Utah Legal Services to bolster its debt collection defense services. "The cy pres doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Allred v. ReconTrust Co., N.A.*, 787 F. App'x 994, 995 (10th Cir. 2019). Utah Legal Services assists the disadvantaged and those of limited means with legal representation in various matters including debt collection. Access to counsel promotes greater accountability by collectors and encourages compliance with consumer protection statutes. Therefore, Utah Legal Services is an appropriate recipient for the cy pres as the next best beneficiary, and the court grants this addition to the proposed class settlement.

## III.   INCENTIVE AWARD

The parties also propose including a $4,500 incentive award for each of the class representatives in the class settlement. The court, however, declines to approve the requested incentive award.

The Fair Debt Collection Practices Act ("FDCPA") provides for the following remedies for a claim brought under the statute: (1) actual damages; (2) in a class action lawsuit, statutory damages up to $1,000 for each named plaintiff and "such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector"; and (3) attorney's fees and costs.

15 U.S.C. § 1692k(a). From this provision, it is clear that statutory damages are the only remedy for class representatives beyond actual damages explicitly provided for under § 1692k(a). Because the FDCPA does not authorize an additional incentive award for class representatives, the court may not grant the relief requested by the parties.[3] *See Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 458 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.").

Yet, Plaintiffs argue that district courts have an equitable power to compensate class plaintiffs for the "time and effort invested in the case," including "monitoring class counsel . . . keeping informed of the progress of the litigation, and serving as a client for purposes of approving any proposed settlement with the defendant." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). They note that district courts regularly award incentive fees to class representatives in the District of Utah despite a lack of statutory authorization. *See Cazeau v. TPUSA, Inc.*, No. 218CV00321RJSCMR, 2021 WL 1688540, at *7 (D. Utah Apr. 29, 2021); *Campbell v. C.R. England, Inc.*, No. 2:13-CV-00262, 2015 WL 5773709, at *8 (D. Utah Sept. 30, 2015); *Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc.*, No. 2:02 CV 950, 2014 WL 3943994, at *2 (D. Utah June 19, 2014).

But this court remains skeptical of Plaintiffs' request. First, the cited district court opinions are not binding on this court. *United States v. Worthon*, 520 F.3d 1173, 1179-80 (10th Cir. 2008). Second, in *Chieftain*, the seemingly relevant Tenth Circuit decision on this issue, the court never explicitly held that district courts have an equitable power to compensate class plaintiffs. Rather,

---

[3] The parties were given an opportunity to brief the court on damages allowed under the Utah Consumer Protection Act ("UCSPA"), but no argument on this topic was ever filed. Utah Code Ann. § 12-1-1.

it declined to decide whether "incentive awards are unlawful per se in common-fund cases," because the party challenging an incentive award had "forfeited any argument about the general legality of incentive awards by failing to raise it . . . ." 888 F.3d at 467. When the Eleventh Circuit was presented with a chance to rule on the legality of incentive fees in similar circumstance just two years ago, it addressed this issue head on and held that it was "clear that Supreme Court precedent prohibits" incentive fees without a statutory basis. *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1258-59 (11th Cir. 2020) (citing *Trustees v. Greenough*, 105 U.S. 527 (1882); *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885)). This court recognizes that not all appellate courts have agreed with the Eleventh Circuit's analysis, but it believes that the Eleventh Circuit offers the most persuasive examination of this issue to date in a landscape where the Tenth Circuit remains agnostic. Ultimately, the widespread use of incentive fees seems driven less by sound legal reasoning and more by "inertia and inattention." *Johnson*, 975 F.3d at 1259.

During the fairness hearing, the parties expressed interest in modifying their settlement agreement to include payments of $1,000 in statutory damages to class representatives, as authorized by 15 U.S.C. § 1692k(a), in the event that the court disproved of their proposed incentive fees. If the parties choose to amend their settlement to include statutory damages in this amount, the court approves the modification.

## CONCUSION & ORDER

For the aforementioned reasons, Plaintiffs' motion for final approval of the two settlement classes is PARTIALLY GRANTED and PARTIALLY DENIED. It is ORDERED that:

1. Final approval of the settlement class is GRANTED;

2. The parties' cy pres proposal is APPROVED; and

3. The parties' request for incentive fees for the class representatives is DENIED.

DATED August 18, 2023

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge